UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

MARY G. JAMES,

        Plaintiff,

        v.                                                Case No. 05-C-1216

METROPOLITAN LIFE INSURANCE
COMPANY,

        Defendant.
_____

**ORDER**

Plaintiff Mary G. James alleges that she was wrongfully denied accidental death and dismemberment ("ADD") benefits under an employee welfare benefit plan in violation of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Defendant Metropolitan Life Insurance Company moves for summary judgment. For the reasons stated below, the motion will be granted.

**BACKGROUND**

Plaintiff Mary G. James was employed by American Express and participated in the American Express Life Insurance Plan (the "Plan"), an employee welfare benefit plan. The plaintiff enrolled her husband, Thomas R. James, for basic life insurance benefits as well as accidental death and dismemberment ("ADD") benefits. The plaintiff is the named beneficiary of Thomas James' life and ADD benefits.

On January 1, 2004, Mr. James died in a motor vehicle accident. According to the Wisconsin Motor Vehicle Accident Report ("accident report"), Mr. James' vehicle left the paved portion of the roadway, went into a sideways slide, struck a

guardrail, and went airborne for approximately 80–90 feet. Mr. James was ejected as the vehicle flipped and pinned under the vehicle. The accident report states that there were no vehicle or highway factors involved in the accident and that driver factors included exceeding the speed limit, inattentive driving, and failure to have control. The toxicology laboratory report performed by the Wisconsin State Laboratory of Hygiene indicates that, at the time of his death, Mr. James' blood ethanol level was .147%, in excess of the legal limit established by Wisconsin law. The report also revealed the presence of cocaine, cocaethylene (a metabolite of cocaine produced after concurrent use of ethanol and cocaine), and benzoylecgonine (a metabolite of cocaine) in Mr. James' blood and urine. The medical examiner's report indicates that "[m]ultiple traumatic injuries secondary to a motor vehicle accident" was the cause of death. The medical examiner's report also notes that recent drug use was an "other significant condition" in Mr. James' death. The State of Wisconsin Department of Health and Family Services Certificate of Vital Record (the "death certificate") states that "multiple traumatic injuries" and motor "vehicle accident" were the "immediate cause" of death and that "recent IV drug use" was another significant condition contributing to Mr. James' death.

Ms. James received $188,000 in basic life insurance benefits. However, defendant Metropolitan Life Insurance Company ("MetLife), the claim fiduciary under the Plan, denied Ms. James' request for ADD benefits. The accidental death insurance provides benefits equal to the elected life insurance benefits–in this case,

$188,000–in the event of death "as a direct result of accidental injury." The ADD policy contains exclusions, including exclusions if death or injury results from "[s]uicide or attempted suicide or any intentionally self-inflicted injury, while sane or insane," or "[u]se of any drug or prescription medication, poison gas taken voluntarily." The Plan names MetLife as claims fiduciary and confers upon MetLife the discretion to interpret Plan provisions and make claim determinations.

After reviewing the claim file,[1] MetLife informed Ms. James that she was not entitled to ADD benefits because it did not determine Mr. James' death to be an "accident" in light of the drug use that contributed to his death. Ms. James requested clarification of the denial of ADD benefits. MetLife informed Ms. James that the original denial was based upon the "use of any drug . . . taken voluntarily" exclusion and the medical examiner's conclusion that Mr. James used cocaine. Ms. James requested administrative review, and MetLife affirmed its original decision. MetLife stated that Mr. James' death was not accidental because he was driving while intoxicated and that coverage was also excluded because Mr. James died because of a self-inflicted injury.

---

[1] MetLife's claim file included a death report from the Kenosha County Medical Examiner; a toxicology laboratory report prepared by the Wisconsin State Laboratory of Hygiene; the Medical Examiner's Report prepared by the Kenosha County Medical Examiner; a Wisconsin Motor Vehicle Accident Report; the Kenosha Sheriff Department Investigation Report; the Kenosha County Sheriff's Department Supplementary Investigation Reports; a Kenosha County Sheriff Department voluntary witness statement; and the State of Wisconsin Department of Health and Family Services Certification of Vital Record (the "death certificate").

-3-

**ANALYSIS**

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In this case, the facts are undisputed.

It is also undisputed that the Plan vests discretionary authority to MetLife to determine eligibility for benefits and that this court must review MetLife's decision to deny Ms. James' claim for benefits under an "arbitrary and capricious" standard of review. *Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir. 1990). To determine whether a decision is arbitrary and capricious, the court examines whether there is a rational connection between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached. *Cozzie v. Metropolitan Life Insurance Company*, 140 F.3d 1104, 1109 (7th Cir. 1998) (citing *Exbom*, 900 F.2d at 1143). The court should focus on the text of the plan and determine whether the administrator's approach demonstrates a reasoned train of thought. *Cozzie*, 140 F.3d at 1109; *O'Reilly v. Hartford Life & Accident Ins. Co.*, 272 F.3d 955, 960 (7th Cir. 2001) (stating that the denial of a claim must be "a reasonable interpretation of the relevant plan documents") (citation omitted).

MetLife's decision to deny Ms. James' claim for ADD benefits is not arbitrary and capricious. The Plan provides that ADD benefits be paid where death is the

-4-

"direct result of accidental injury" and where no exclusions apply. The Plan does not define "accidental" or "accidental injury," but it gives MetLife the discretion to interpret Plan provisions. Under similar circumstances, other courts, including the Seventh Circuit, have determined that a claim fiduciary reasonably interprets "accident" to exclude a death that occurs as a result of driving while intoxicated because that result is reasonably foreseeable. *See, e.g., Cozzie*, 140 F.3d at 1109-10. As in *Cozzie*, MetLife's interpretation of "accidental" or "accidental injury" as excluding death that occurs by driving while under the influence of alcohol or cocaine does not contradict the plain wording of the policy and is supported by judicial decisions. *Id.* at 1110. The court, therefore, does not find MetLife's interpretation of the Plan to be unreasonable.

Even clearer than the policy in *Cozzie*, the Plan in this case contains an explicit exclusion for death resulting from "the use of any drug . . . taken voluntarily." It is undisputed that the toxicology report indicated that Mr. James had recently used cocaine at the time of his death; it is undisputed that the medical examiner determined that recent drug use was an "other significant condition" of Mr. James' death; it is undisputed that the death certificate indicated that "recent IV drug use" was another significant condition contributing to Mr. James' death. MetLife's determination that Mr. James' death was causally related to "the use of any drug . . . taken voluntarily," therefore, is not unreasonable.

-5-

Ms. James argues that *Cozzie* is distinguishable. In this case, Ms. James argues, there were causes of the car accident other than the alcohol and drug use, including exceeding the speed limit, inattentive driving, and failure to have control of the vehicle.[2] Ms. James also argues that the cause of death was due to multiple traumatic injuries. Ms. James argues that several police reports do not indicate that Mr. Jones was driving under the influence of alcohol or drugs and that a newspaper article stated that alcohol did not appear to be a factor in the crash. Finally, Ms. James argues that the death certificate indicates that drug use "contributed to" Mr. James' death rather than "resulted in" his death.

None of Ms. James' arguments are persuasive. A reasonable person could conclude that the excessive speeding, inattentive driving, and failure to have control of the vehicle are related to Mr. James' ingestion of alcohol or cocaine. Similarly, a reasonable person could conclude that the multiple traumatic injuries Mr. James sustained are related to his drug use. Therefore, the court does not consider these factors to be "other" causes of the accident in a way that distinguishes this case from *Cozzie*. Mr. Cozzie's vehicle missed a curve in the road, struck an embankment, and rolled over three times. *Cozzie*, 140 F.3d at 1106. Mr. Cozzie was pinned by the car, and the coroner's report indicated that the cause of death was asphyxiation. *Id.* At the time of his death, Mr. Cozzie had a blood alcohol level of .252%. *Id.* The

---

[2]The court notes that an eyewitness report indicates that Mr. James was not traveling at an excessive speed, (Presite Aff. Ex. 1 MLIC 103), and no person reported seeing Mr. James exceeding the speed limit.

-6-

*Cozzie* court recognized that the only apparent cause of the accident was the amount of alcohol ingested, *see id.* at 1111, not asphyxiation or inattentive driving. In the same vein, the death certificate's characterization of Mr. James' recent IV drug usage as an "other significant condition contributing to but not resulting in" death does not mean that MetLife is unreasonable in determining that drug use is causally related to the accident. By pointing to the driver factors listed in the accident report or the injuries that Mr. James sustained, Ms. James does not distinguish this case from *Cozzie* or show that there were other causes of the accident unrelated to Mr. James' alcohol or drug use.

Ms. James argues that several police reports do not indicate that Mr. Jones was driving under the influence of alcohol or drugs and that a local newspaper article quoted an officer who stated that alcohol did not appear to be a factor in the crash. By this argument, Ms. James suggests that drug use was not a factor in the car accident. The toxicology reports and the medical examiner's conclusions are undisputed. Ms. James does not deny that Mr. James had a blood ethanol level of .147% or cocaine in his system at the time of his death. The accident report does not contradict the toxicology report: the accident report indicates that it was unknown whether alcohol or drugs affected Mr. James because tests were not administered at the scene of the accident. (Presite Aff. Ex. 1 MLIC 96.) Moreover, the toxicology report is dated March 9, 2004, (Presite Aff. Ex. 1 MLIC 73), and the newspaper article was published on January 3, 2004 (Presite Aff. Ex. 1 MLIC 110-11); a

-7-

reasonable person could conclude that the police reports and the newspaper article were written prior to the issuance of the toxicology report so that there would have been no basis for the police reports or the article to state that Mr. James was driving under the influence of alcohol or cocaine. Despite Ms. James' suggestion, there is no evidentiary conflict regarding Mr. James' ingestion of alcohol and cocaine.

*Cozzie* did not go so far as to declare that all deaths causally related to the ingestion of alcohol could reasonably be construed as accidental, *Cozzie*, 140 F.3d at 1110, but this is not a case in which the "insured engages in conduct that results in a loss that could not have been reasonably anticipated." *Id.* By driving under the influence of cocaine and alcohol, Mr. James assumed a significantly greater risk–a risk that he could have reasonably anticipated–of being involved in a fatal car crash. MetLife's determination that Mr. James' injuries were not "accidental" under the terms of the Plan is not unreasonable nor is MetLife's determination that Mr. James' death is causally related to drugs that he voluntarily ingested. Therefore, the court cannot conclude that MetLife's denial of Ms. James' claim is arbitrary and capricious.

Accordingly,

-8-

Case 2:05-cv-01216-JPS    Filed 10/23/06    Page 8 of 9    Document 33

**IT IS ORDERED** that the defendant's motion for summary judgment be and the same is hereby **GRANTED** and this action be and the same is herewith **DISMISSED** on its merits, together with costs as taxed by the clerk of the court..

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this  23rd  day of October, 2006.

                                        BY THE COURT:

                                        s/ J. P. Stadtmueller
                                        J. P. Stadtmueller
                                        U.S. District Court